# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CHRISTOPHER A. SUMMERS,

        Petitioner,     :     Case No. 3:16-cv-387

  - vs -                     District Judge Thomas M. Rose
                                Magistrate Judge Michael R. Merz

CHARLOTTE JENKINS, Warden,
Chillicothe Correctional Institution,

                                    :

        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS; ORDER DENYING MOTION FOR EVIDENTIARY HEARING

This habeas corpus case is before the Court on "Petitioner Christopher Summers' Objection to Magistrate's[1] February 22, 2017, Report and Recommendation and Motion for Evidentiary Hearing" ("Objection," ECF No. 17). District Judge Rose has recommitted the case for reconsideration in light of the Objection (ECF No. 18).

Petitioner pleaded five Grounds for Relief from his conviction and sentence arising out of his sexual misconduct as a teacher with one of his students. In the Report and Recommendations ("Report,"ECF No. 16)(reported at 2017 U.S. Dist. LEXIS 24710 (S.D. Ohio Feb. 22, 2017)), the undersigned recommended that Grounds One, Two, Three, and Five be dismissed on the merits and that Ground Four be dismissed as procedurally defaulted.

---

[1] Counsel refers to the undersigned throughout the Objection as "Magistrate." The title of the office was changed by Congress in 1991 to "Magistrate Judge." Shortening the title to "Magistrate" is an unusual contraction. While the Supreme Court is sometimes spoken of colloquially as "the Supremes," one never hears a Circuit Judge referred to as a "Circuit" or a District Judge referred to as a "District." Why then contract "Magistrate Judge" to "Magistrate"?

1

**Background Facts**

Christopher Summers was a teacher at Fort Recovery High School. The complaining witness in this case, J.K., was a student at that school; Summers was her freshman study hall monitor, her accounting teacher, and her junior varsity basketball and track coach. *State v. Summers*, 2014-Ohio-4538, 2014 Ohio App. LEXIS 4448, ¶ 6 (3rd Dist. Oct. 14, 2014).[2] During the summer of 2010, Summers began to have a sexual relationship with J.K. which started with vaginal intercourse. *Id.* at ¶ 13. During the following weeks before the end of July 2010 the complaining witness had oral sex with Summers at least one time and vaginal intercourse another time. *Id.* at ¶¶ 17-18. During the same summer when her parents were out of town, Summers had anal and then oral intercourse with her. *Id.* at ¶ 21. During her junior year, Summers digitally penetrated J.K. during basketball trips and had vaginal intercourse with her five to ten times. *Id.* at ¶ 22. Sexual incidents continued through her graduation in 2012. *Id.* at ¶ 25. Eventually J.K. told her mother and they went together to the police.

Summers was indicted by the Mercer County grand jury in January 2013 on two counts of rape, forty-two counts of sexual battery, two counts of felonious assault, one count of gross sexual imposition, and one count of attempted sexual battery based on the facts recited above (State Court Record, ECF No. 7, PageID 30-50). Summers pled not guilty to all counts, but

---

[2] These factual statements are taken from the Third District Court of Appeals decision on direct appeal which depended on the complaining witness' testimony. Summers asserts that some of the factual findings of the Ohio courts are rebutted by clear and convincing evidence. None of the factual findings Summers disputes are recited in this section.

engaged in plea negotiations prior to trial.[3] The two counts of rape were dismissed, but trial proceeded on the remaining counts until Summers agreed to plead guilty to eight counts of sexual battery. *Id.* at PageID 56-59. He received an aggregate prison sentence of twenty years. *Id.* at PageID 66.

**Structure and Content of the Objection**

Fed. R. Civ. P. 72(b)(2) provides that a party who is dissatisfied with the report of a Magistrate Judge on a dispositive matter "may serve and file specific written objections to the proposed findings and recommendation." Under (b)(3), district judge review is *de novo*.

Petitioner's counsel has filed eleven specific objections (Objection, ECF No. 17, PageID 925-30). After those five pages, however, she has copied twenty-nine pages of her Reply (ECF No. 15) into the Objection (ECF No. 17, PageID 930-60). **The copy is verbatim with some very minor additions.** The Reply was, of course, dealt with in the Report and this Supplemental Report will not deal with the same text copied into the Objection.

The Objection raises eleven specific objections to the Report which will be considered seriatim.

**Objection One: Wrong Standard Adopted and Applied for the Prejudice Prong of Ineffective Assistance of Trial Counsel in Plea Negotiations**

Although there had been some plea negotiations before trial, a plea agreement was reached at or very near the end of the State's case, after the complaining witness had finished her

---

[3] The Objection claims Summers rejected all offers from the State prior to trial. But his own Affidavit in post-conviction shows he was willing to plead to at least one count and not insist on a trial (State Court Record, ECF No. 7, PageID 212).

direct testimony but before she had been cross-examined. Summers had been indicted on two counts of rape, forty-two counts of sexual battery, one count of attempted sexual battery, one count of gross sexual imposition, and two counts of felonious assault (State Court Record, ECF No. 7, PageID 30-50). The two rape counts were nolled just before trial, but Summers went to trial on the remaining counts. Pursuant to a written plea agreement, he pleaded guilty to eight counts of sexual battery. His First Ground for Relief claims ineffective assistance of trial counsel with respect to the negotiation of that plea.

Petitioner's First Objection is that "[t]he Magistrate adopted an incorrect standard for assessing the prejudice prong in ineffective assistance of trial counsel claims involving plea negotiations." (Objection, ECF No. 17, PageID 925). Summers asserts the undersigned wrongly adopted a test of "whether the petitioner would have continued with and prevailed at trial." The correct test, Summers asserts, is whether his "fundamental right to have his guilt or innocence determined by a jury was compromised." *Id.*, citing *Johnson v. Uribe*, 682 F.3d 1238 (9th Cir. 2012). Further, Summers says the undersigned erred by relying on *Hill v. Lockhart*, 474 U.S. 52 (1985), which he asserts has been significantly modified by *Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012); and *Padilla v. Kentucky*, 559 U.S. 356 (2010).[4]

The relevant portion of the Report reads:

> The *Strickland* standard applies in evaluating ineffective assistance claims in cases which resulted in a negotiated plea. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). In order to satisfy the "prejudice" prong of *Strickland* in a negotiated plea case, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or no contest and would have insisted on going to trial. *Hill*, 474 U.S. at 58. Moreover, he must show that there would have been a reasonable chance he would have been acquitted had he gone to trial. *Id*. at 59.

---
[4] Counsel cites these cases to the Supreme Court Reporter. S. D. Ohio Civ. R. 7.2(b) provides that citation should be to the official United States Reports once they have been published,

> "The test is objective, not subjective." *Plumaj v. Booker*, 629 Fed. Appx. 662 (6th Cir. 2015), quoting *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012). To obtain relief, [a petitioner] "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). The rationality of such a rejection is typically based on multiple factors, including the strength of the evidence against a defendant, the lack of viable defenses, and the benefits of the plea bargain. See *Pilla*, 668 F.3d at 373; *Haddad v. United States*, 486 F. App'x 517, 522 (6th Cir. 2012).

(Report, ECF No. 16, PageID 901.)

The Objection never explains how, supposedly, *Lafler, Frye*, and *Padilla* modified *Hill* in a way relevant to this case. In *Lafler*, for example, the Court held:

> To establish *Strickland* prejudice a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.[Strickland],* at 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674. In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice. See *Frye, ante,* at 148, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (noting that *Strickland*'s inquiry, as applied to advice with respect to plea bargains, turns on "whether 'the result of the proceeding would have been different'" (quoting *Strickland, supra*, at 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674)); see also *Hill*, 474 U.S., at 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 ("The . . . 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process"). In *Hill*, when evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Court required the petitioner to show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Ibid*.

566 U.S. at 163. That is an endorsement of the *Hill* standard, not a modification of it.

Summers criticizes the undersigned for following the unpublished Sixth Circuit decision in *Plumaj v. Booker*, 629 Fed. Appx. 662 (6th Cir. 2015), rather than the Ninth Circuit decision in *Johnson*, *supra.* (Objection, ECF No. 17, PageID 926). Although "[u]npublished opinions are

5

never controlling authority," *TriHealth, Inc., v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 789 (6th Cir. 2005), a prior unpublished Sixth Circuit opinion can "establish the law" governing a particular subject. *PBGC v. Alloytek*, 924 F.2d 620 (6th Cir. 1991). In this case, the *Plumaj* opinion was quoting published Sixth Circuit authority, to wit, *Pilla*, *supra*. Even an unpublished Sixth Circuit decision would seem to outweigh a Ninth Circuit decision, published or not. And finally, in determining whether a state court decision on a constitutional question is entitled to deference in habeas proceedings, the test is whether the state court decision unreasonably applied United States Supreme Court precedent, not precedent at the circuit court level. A circuit court may not use circuit precedent "to refine or sharpen a general rule of Supreme Court jurisprudence into a specific rule that" the Supreme Court has not announced. *Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 190 L. Ed. 2d 1 (2014)(per curiam); *Marshall v. Rodgers*, 569 U.S. ___, 133 S. Ct. 1446, 185 L. Ed. 2d 540 (2013)(per curiam).

Moreover, even *Johnson*, Petitioner's preferred authority, nowhere says the test for prejudice is whether a defendant's jury trial right has been compromised. As that case was before the Ninth Circuit, the issue of prejudice had been settled and the only question was the appropriate remedy for the ineffective assistance of trial counsel which occurred.

**Objection Two: Incorrect Application of the Prejudice Standard**

Summers faults the Report for finding that the plea agreement was favorable to him (Objection, ECF No. 17, PageID 926-27).

On this point, the Report concluded:

> The First Ground for Relief also fails on the prejudice prong of *Strickland*. The trial judge evinced in his post-conviction opinion

> his belief that the jury would have convicted on far more than eight counts and that, had that happened, he would have imposed a more severe sentence.

(Report, ECF No. 16, PageID 907-08.) Summers objects:

> [T]he Magistrate found that Summers' plea bargain – in which he plead guilty to eight counts and was sentenced to a 20-year prison term – was favorable to him. This is incorrect. As the Magistrate noted, many of the 41 counts with which Summers was charged would have merged for sentencing purposes. See PAGEID 906 n.1 ("The Court recognizes that, upon conviction, many of those counts would likely have merged under Ohio Revised Code § 2941.25."). Thus, in reality, Summers was not facing a vastly longer sentence had he continued with trial rather than pleading guilty. *Id*. In addition, the Magistrate's reliance upon the trial judge's opinion that Summers would have been convicted of more counts at trial was improper. See, e.g., *Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007); *Vasquez v. Bradshaw*, 522 F.Supp.2d 900, 907 (N.D. Ohio 2007). The trial judge, like the jury, had not heard all of the evidence – including voluminous text messages suggesting the victim consented to and in some instances initiated the affair – and therefore could not determine whether Summers was guilty or innocent.

(Objection, ECF No. 17, PageID 926-27.)

The Indictment charges that Summers and J.K. engaged in sexual conduct on numerous occasions between June 28, 2010, and October 2012. J.K.'s testimony would have supported convictions for numerous incidents. The Report concedes that, if Summers had been convicted on all forty-five non-rape counts, some of those counts would have merged under Ohio Revised Code § 2941.25. Summers was permitted to plead to eight counts of sexual battery by virtue of the teacher-student relationship on the dates shown, to wit, Counts Three (June 28, 2010), Five (July 3, 2010), Seven (July 4-11, 2010), Ten (Summer 2010), Thirteen (September 4, 2010), Fifteen (November 2010 to March 2011), Thirty-six (January 2011), and (Forty-four May 2012) (Negotiated Plea Agreement, State Court Record, ECF No. 7, PageID 56). Each of these counts had a correlative sexual battery count alleging Summers coerced J.K. into having sex on the

7

same date as the teacher-student count. However, there were twelve other teacher-student counts (17, 19, 21, 23, 25, 27, 29, 31, 33, 38, 40, and 42) each of which also had a correlative coercion count. By accepting the plea bargain, Summers avoided conviction on any of these counts. More importantly, he also avoided conviction on either of the two separate felonious assault charges which arose out of his "branding" J.K. by cutting a "C" into her ankle flesh and then making it seem the wounds were self-inflicted by sending a fake text from her cellphone to his.[5]

The maximum penalty for violating Ohio Revised Code § 2907.03(A)(1) is eight years imprisonment. Had Summers been convicted of all twenty incidents of sexual battery by a teacher on a student, he would have faced a maximum sentence on those charges of 100 years imprisonment. Felonious assault is a felony of the second degree, punishable by up to eight years imprisonment. Twenty years, the sentence actually imposed, is a long sentence, but the maximum sentence upon conviction, even with merger under Ohio Revised Code § 2941.25 would have been more than five times as long. The trial judge expressly said that he would have imposed a harsher sentence than he did if Summers had been convicted at trial (Judgment Entry on Post-Conviction, State Court Record, ECF No. 7-1, PageID 398).

Summers also objects to the Report's "reliance upon the trial judge's opinion that Summers would have been convicted of more counts at trial was improper. . . ," citing *Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007), and *Vasquez v. Bradshaw*, 522 F. Supp. 2d 900, 907 (N.D. Ohio 2007) (Objection, ECF No. 17, PageID 927).

On post-conviction, the trial judge found "In fact, the evidence presented in the trial proceedings appeared to overwhelmingly establish that Summers was guilty beyond a reasonable doubt of crimes beyond those to which he knowingly, intelligently, and voluntarily entered guilty

---

[5] As Petitioner will probably point out, this is according to J.K.'s testimony, but that was the only testimony before the state courts.

pleas." (Judgment Entry on Post-Conviction, State Court Record, ECF No. 7-1, PageID 397-98.)

In *Ramonez*, the trial attorney failed to interview three eyewitnesses. Those witnesses testified in a post-trial hearing on an ineffective assistance of trial counsel claim. The trial judge found that not calling the witnesses was consistent with a reasonable trial strategy; on the prejudice prong, he found one of them incredible, one not particularly helpful, and did not mention the third. 490 F.3d at 486. The Sixth Circuit reversed denial of the writ, finding on the deficient performance prong of *Strickland* that trial counsel should have interviewed these witnesses. 490 F.3d at 488. The court then turned to the prejudice prong, applying the same standard the Report applied: "Ramonez must show a reasonable probability that but for that deficiency the outcome of the trial would have been different (*Strickland*, 466 U.S. at 694)." *Id.* at 489. Because the uninterviewed witnesses told plausible, albeit impeachable, stories in post-conviction, the Sixth Circuit found prejudice in not presenting them at all.

Nothing in *Ramonez* makes reliance on this trial judge's credibility finding "improper." In post-conviction, all that the trial judge had to work with was the victim's direct testimony. On the issue of prejudice, nothing was presented in post-conviction that contested J.K.'s account of the sexual misconduct.[6] In *Ramonez* the three uninterviewed witnesses were guilt-or-innocence witnesses whom the jury could have compared. Summers gave up his right to have a jury make that determination. While he claims his waiver was the result of bad lawyering, it was still his burden to prove prejudice, i.e., a likely different outcome.

Trial counsel in *Vasquez*, *supra*, also failed to conduct an adequate investigation in the fact of what the habeas court called a weak state's case. Here, again, the state post-conviction court and the habeas court had the benefit of witnesses, including the defendant, who would have

---

[6] Counsel emphasizes the numerous text messages from J.K. to Summers indicating her interest in continuing the relationship, but consent is irrelevant in a teacher-student sexual misconduct case in proving a defense.

9

testified favorably if called. Judge Polster followed *Ramonez* and weighed the evidence in determining prejudice. But there was evidence to weigh on both sides there as well. In this case the trial judge had only J.K.'s testimony to weigh.

**Objection Three: Improper Assessment of Deficiency Prong**

In his Third Objection, Summers asserts:

> The Magistrate also improperly assessed the deficiency prong of Summers' ineffective assistance in plea bargaining stage by ignoring the fact that Summers' attorney lied to him about the role of the jury and the law governing jury verdicts and by discounting the impact of cross-examination material in the possession of defense counsel that he failed to use prior to urging Summers to plead guilty. See PAGEID 907-8.

(Objections, ECF No. 17, PageID 927.) Summers gives no record reference to show the alleged lie about the jury's role and the law governing jury verdicts. The Objection criticizes the state judge's and Magistrate Judge's discounting of the potential cross-examination material, noting that a case depending on only one witness is "weak." Weak in the face of what? There was no evidence presented in post-conviction that raised any question about whether the sexual conduct happened or the length of time the relationship went on, to wit, most of J.K.'s high school career. Summers' own affidavit in post-conviction does not deny engaging in sexual conduct with J.K. (State Court Record, ECF No. 7, PageID 211, et seq.)

**Objection Four:  Error in Finding that Summers Made Counteroffers to the State**

Summers' fourth specific objection is "[t]he Magistrate erred in concluding that there had been counteroffers in plea negotiations prior to trial. See PAGEID 906.  Summers never made any counteroffers." (Objection, ECF No. 17, PageID 928.)

This objection, read literally, is correct.  Summers' Reply begins by asserting that he "unwaveringly" insisted on having a jury decide his guilt or innocence.[7]  That implies that Summers always asserted his innocence and was unwilling to engage in any plea negotiations until his attorney "coerced" him into doing so.  In his Affidavit Summers admits that he wanted Mr. Howell to present a plea bargain under which he would plead guilty to one count with the rest dismissed (Affidavit, ECF No. 7, PageID 212).  However, Mr. Howell refused to present that offer, calling it an insult. *Id.*  Thus this offer was never made and the State's offer of a plea to twenty counts was rejected.  Because Summers' desire to plead to one count is mentioned in his Affidavit as happening after the State's initial 20-count offer, the Magistrate Judge read it as a "counteroffer."  Technically it may not have been.

**5.     Misadvice Not Cured by Plea Colloquy**

Summers' fifth specific objection is "[t]he Magistrate erred in concluding that the misleading advice of Summers' attorney regarding sentencing was negated by the plea colloquy, when the plea colloquy did not address the sentence Summers *would* receive, only the sentence[sic]

---

[7] "At stake in this case is Petitioner Christopher Summers' fundamental and constitutionally-protected right to a jury trial – a right Summers consistently and unwaveringly asserted when he was accused in state court of engaging in a sexual relationship with a student, and a right he only agreed to forego in the middle of his criminal trial because he was lied to by his lawyer."  These are the first sixty-three words of a 31-page Reply which set the tone for Summers' argument.

11

*could* receive. *See* PAGEID 907." (Objections, ECF No. 17, PageID 928.)

There is obviously no constitutional requirement that a plea colloquy advise a defendant of the sentence he or she will receive or is likely to receive. This plea colloquy was constitutionally adequate.

**6.     Error in Deferring to State Court Credibility Determination**

Summers' sixth specific objection is "[t]he Magistrate erred in adopting the state court's legal conclusion that the uncontroverted affidavits submitted by Summers were self-serving." (ECF No. 17, PageID 928.)

This objection is factually inaccurate. The trial judge did not find that the post-conviction affidavits were "self-serving," but rather that they contained similar content and hearsay, were from relatives and friends, and contradicted what was said in both the plea colloquy and the sentencing hearing (Decision, ECF No. 7-1, PageID 397). Nor did the undersigned find that the affidavits were unworthy of belief because they were self-serving, although, of course, Summers' own Affidavit was self-serving.

Summers sought summary judgment in post-conviction. The Objection complains it was wrong to hold that against him because he sought and was denied an evidentiary hearing in post-conviction (Objection, ECF No. 17, PageID 928-29). The Report found, correctly, that Summers had moved for summary judgment on the basis of the affidavits presented (Report, ECF No. 16, PageID 904, citing Judgment Entry, ECF No. 7-1, PageID 393). It is accurate that, in the body of his Petition for Post-Conviction Relief, Summers did ask for an evidentiary hearing (State Court Record, ECF No. 7, PageID 200). The State Court Record does not contain a separate motion for hearing nor any entry denying one.

### 7. Report Filed Before Summers Could Ask for an Evidentiary Hearing

Summers' seventh specific objection is "[t]he Magistrate erred in resolving Summers' habeas petition a mere two days after he submitted his traverse and before Summers had an opportunity to request an evidentiary hearing in this case." (Objection, ECF No. 17, PageID 929.)

As to the speed with which the Report was filed, the case was ripe when the Reply was filed and there is no rule of law or common practice in the federal courts, so far as the undersigned is aware, of allowing a certain amount of time to pass between ripeness and a recommended decision. There is no standard scheduling order for habeas cases. Unlike the Cincinnati location of court, with whose practice counsel may be more familiar, this location of court does not have pro se law clerks to whom these cases can be assigned. Instead, they are referred directly to the Magistrate Judge. Nor do the Rules Governing § 2254 cases imply that some period of time will elapse between ripeness and filing a motion for evidentiary hearing.

Counsel may know that the undersigned has been heavily involved with litigating In re: Ohio Lethal Injection Protocol, Case No. 2:11-cv-1016, in which there were more than three hundred filings between October 3 and the end of January, culminating in the issuance of a preliminary injunction order at the end of January. The undersigned was and is obliged to use the time made available by the movement of that case to the Sixth Circuit to bring the rest of the docket current.

In any event, Summers is not entitled to an evidentiary hearing. Habeas corpus courts are limited to the record developed in the state courts in determining whether those courts' decisions deserve deference under 28 U.S.C. § 2254(d). In *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Supreme Court held that a federal court's review of a state court decision under 28 U.S.C. § 2254(d)(1) is strictly limited to "review of the state court record," and that evidence acquired through use of an evidentiary hearing may not be considered. *Id.* at 182. The Supreme Court

13

further stated that section 2254(e)(2) only "continues to have force where Section 2254(d)(1) does not bar federal habeas relief." *Id.* at 185. Summers' request for an evidentiary hearing does nothing to overcome the *Pinholster* bar.

**Objection Eight:  Error in Denying Ineffectiveness Claim as to Sentencing**

Summers' eighth specific objection is purely conclusory:  "[t]he Magistrate erred in denying Summers' ineffective assistance at sentencing claim." (Objection, ECF No. 17, PageID 929.) Only specific objections are preserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

**Objection Nine:  Error in Rejecting Comparative Sentences Table**

Summers' ninth specific objection is

> The Magistrate erred in dismissing the utility of a chart of comparative sentences doled out in teacher-student sex cases in Ohio in assessing the proportionality and constitutionality of Summers' sentence, when the chart was in the state court record and was presented to the state appellate court. See PAGEID 917; R. 7 State Court Record Ex. 9 Appellate Brief, p. 17 PAGEID 95, Ex. A PAGEID 104.

In declining to give weight to the table in question, the undersigned noted serious problems with its foundation. It is merely a list of names and sentences without any explanation of who prepared it and from what data sources. There is no authenticating affidavit. Indeed, as the Report notes, "[t]he only explanation of the exhibit" is the statement that it is believed to support the claim that Summers' sentence is disproportionate. The Report concludes "Who

14

created this exhibit from what data sources?" That question remains. The fact that a piece of paper is in the state court record does not prove it is probative of anything.

**Objection Ten:  Error in Denying the Ineffective Assistance of Appellate Counsel Claim**

This specific objection is, like Number 8, purely conclusory.

**Objection Eleven:  Error in Denying Equal Protection Claim**

This specific objection is also purely conclusory.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge again respectfully recommends the Petition be DISMISSED WITH PREJUDICE. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

March 16, 2017.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).